1  David A. Van Riper (SBN 128059)
   eservice@vanriperlaw.com
2  VAN RIPER LAW
   1254 Irvine Boulevard, Suite 200
3  Tustin, California 92780-3571
   Phone: (714) 731-1800
4  Fax: (714) 731-1811

5  Attorneys for Plaintiffs DISH Network L.L.C. and NagraStar LLC

6
7
8                    **UNITED STATES DISTRICT COURT**
9            **CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION**
10

| | |
|---|---|
| 11  DISH NETWORK L.L.C. and NAGRASTAR LLC | Case No.: 2:17-cv-03528-MWF-JPR |
| 12 | |
| 13              Plaintiffs,   vs. | Action Filed : May 10, 2017 Pre-Trial Date: [TBD] Trial Date: [TBD] |
| 14  PAUL JIMENEZ | |
| 15 | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT** |
| 16              Defendants. | |
| 17 | |
| 18 | DATE:    October 16, 2017  TIME:    10:00 a.m.  COURT: First Street Courthouse |
| 19 | 350 West First Street  Los Angeles, California 90012 |
| 20 | CTRM    5A |
| 21 | JUDGE:  Hon. Michael W. Fitzgerald |
| 22 | [Filed Concurrently With: |
| 23 | -  Notice of Motion and Motion; -  Declaration of David A. Van Riper; -  Declaration of Christopher Ross; |
| 24 | -  Declaration of Gregory Duval; -  (Proposed) Default Judgment; and, |
| 25 | -  Proof of Service by Mail.] |

26
27
28



## TABLE OF CONTENTS

I. INTRODUCTION ................................................................................................ 1

II. ARGUMENT & AUTHORITIES ..................................................................... 2

    A. Legal Standard ............................................................................................ 2

    B. The *Eitel* Factors Support Granting Default Judgment Against Defendant ..................................................................................................... 2

        1. DISH Network Will Be Prejudiced Absent a Default Judgment . 2

        2. DISH Network Adequately Pleads Defendant's ECPA Violations ................................................................................................. 3

        3. The ECPA Allows for The Damages Requested By DISH Network ................................................................................... 5

        4. There Is No Potential for A Dispute Over Material Facts ............ 6

        5. Defendant's Default Is Not the Result Of Excusable Neglect ..... 6

        6. Public Policy Does Not Preclude Default Judgment .................... 7

    C. DISH Network Should Be Awarded $10,000 In Statutory Damages ..... 8

        1. Defendant Engaged in Piracy Violating The ECPA ..................... 9

        2. Defendant Caused Actual Harm to DISH Network ................... 10

        3. The Relative Financial Burdens Favor DISH Network .............. 11

        4. There Is No Justification for Defendant's ECPA Violations ..... 11

        5. Awarding Damages to DISH Network Serves Important Purposes ................................................................................... 12

    D. DISH Network Should Be Awarded Permanent Injunctive Relief ...... 12

        1. DISH Network Is Suffering Irreparable Harm That Will Not Be Corrected with Monetary Damages Alone ................................ 13

        2. The Balance of Hardships And Public Interest Favor An Injunction .................................................................................. 16

        3. The Injunction Must Be Sufficient to Prevent Defendant From Violating DISH Network's Rights Under The ECPA ................ 17

    E. DISH Network Should Be Awarded Reasonable Attorney's Fees ....... 18

III. CONCLUSION ................................................................................................ 18

# **TABLE OF AUTHORITIES**

**Cases**

*Adriana Int'l Corp. v. Thoeren*,
  913 F.2d 1406 (9th Cir. 1990) ...................................................................................3

*Aldabe v. Aldabe*,
  616 F.2d 1089 (9th Cir. 1980) ...................................................................................2

*Apple Computer, Inc. v. Franklin Computer Corp.*,
  714 F.2d 1240 (3d Cir. 1983) ..................................................................................16

*Cal. ex rel. Van De Kamp v. Tahoe Reg'l Planning Agency*,
  766 F.2d 1316 (9th Cir. 1985) .................................................................................13

*Coach Servs., Inc. v. YNM, Inc.*,
  2011 WL 1752091 (C.D. Cal. May 6, 2011) ............................................................6

*Coxcom, Inc. v. Chaffee*,
  536 F.3d 101 (1st Cir. 2008) ............................................................................15, 16

*Davis v. Fendler*,
  650 F.2d 1154 (9th Cir. 1981) ...................................................................................8

*DirecTV, Inc. v. Bennett*,
  470 F.3d 565 (5th Cir. 2006) .....................................................................................4

*DirecTV, Inc. v. Webb*,
  545 F.3d 837 (9th Cir. 2008) .....................................................................................4

*DISH Network L.L.C. v. DelVecchio*,
  831 F. Supp. 2d 595 (W.D.N.Y. 2011) ..................................................................5, 9

*DISH Network L.L.C. v. Dillion*, No. 12cv157 BTM (NLS),
  2012 WL 368214 (S.D. Cal. Feb. 3, 2012) ......................................................14, 15

*DISH Network L.L.C. v. Gonzalez*,
  2013 WL 2991040 (E.D. Cal. June 13, 2013) ..... 3, 4, 5, 6, 8, 9, 10, 11, 12, 15, 16, 17, 18

*DISH Network L.L.C. v. Gonzalez*,
  2013 WL 4515967 (E.D. Cal. Aug 26, 2013) ............................................. 3, 12, 18

*DISH Network L.L.C. v. Rounds*,
  2012 WL 1158798 (W.D. Pa. Apr. 6, 2012) ...........................................................11

*DISH Network L.L.C. v. Whitcomb*,
  2011 WL 1559825 (S.D. Cal. Apr. 25, 2011) ...................................................15, 16

*eBay Inc. v. MercExchange, L.L.C.*,
  547 U.S. 388 (2006) ................................................................................................13

*eBay, Inc. v. Bidder's Edge, Inc.*,
  100 F. Supp. 2d 1058 (N.D. Cal. 2000) ..................................................................13

*Eitel v. McCool*,
 782 F.2d 1470 (9th Cir. 1986) ..........................................................2, 3, 5, 6, 7, 8

*Elektra Entm't Group Inc. v. Bryant*,
 2004 WL 783123 (C.D. Cal. Feb. 13, 2004) ......................................................7

*Macrovision v. Sima Prods, Corp.*, No. 05 Civ. 5587 (RO),
 2006 WL 1063284 (S.D.N.Y. Apr. 20, 2006) ..................................................14

*Orantes-Hernandez v. Thornburgh*,
 919 F.2d 549 (9th Cir. 1990) ............................................................................17

*Pepsico, Inc. v. Cal. Sec. Cans*,
 238 F. Supp. 2d 1172 (C.D. Cal. 2002) ..............................................................7

*Phillip Morris USA Inc. v. Castworld Prods., Inc.*,
 219 F.R.D. 494 (C.D. Cal. 2003) .....................................................2, 3, 5, 6, 7, 8

*Rent-A-Center, Inc. v. Canyon Television & Appliance Rental, Inc.*,
 944 F.2d 597 (9th Cir. 1991) ............................................................................13

*Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*,
 240 F.3d 832 (9th Cir. 2001) ............................................................................13

*TeleVideo Sys., Inc. v. Heidenthal*,
 826 F.2d 915 (9th Cir. 1987) .....................................................................3, 6, 11

*Triad Sys. Corp. v. Se. Express Co.*,
 64 F.3d 1330 (9th Cir. 1995) ............................................................................16

*United States v. Lande*,
 968 F.2d 907 (9th Cir. 1992) ..............................................................................4

**Statutes**

Electronic Communications Privacy Act, 18 U.S.C. § 2511 ................................3, 4

Electronic Communications Privacy Act, 18 U.S.C. § 2520 ................3, 4, 7, 11, 15

**Rules**

Federal Rule of Civil Procedure 55 ...................................................................1, 6, 7

Federal Rules of Civil Procedure 65 .......................................................................14

Local Rule 55-3 .......................................................................................................15



In accordance with Federal Rule of Civil Procedure 55(b)(2), Plaintiffs DISH Network L.L.C. and NagraStar LLC (collectively, "DISH Network") respectfully move the Court to grant default judgment against Defendant Paul Jimenez ("Defendant").

## I. INTRODUCTION

DISH Network filed this action on May 10, 2017 based on evidence it obtained showing that Defendant circumvented DISH Network's security technology and intercepted the copyrighted satellite television programming broadcast by DISH Network without paying the required subscription fee.

In particular, DISH Network received the records of a confidential informant that oversaw and managed the sale of subscriptions to a pirate television service called NFusion Private Server ("NFPS"). Each subscription consists of a passcode that enables access to the NFPS servers. The NFPS servers are used to transmit DISH Network's proprietary control words or "keys" over the Internet to the subscriber's receiver – the basis of a form of piracy referred to as "Internet key sharing" or "IKS." With these control words, the subscriber is able to receive DISH Network's encrypted satellite broadcasts without authorization. The records provided by the confidential informant and other evidence obtained by DISH Network establish that Defendant purchased at least one passcode to the NFPS service ("IKS Server Passcodes"), and in fact used the service to steal DISH Network programming.

Defendant failed to respond or otherwise defend this action despite being properly served, and therefore default was entered on July 21, 2017. (Dkt. 11.) For the reasons below, default judgment is now appropriate.



## II. ARGUMENT & AUTHORITIES

### A. Legal Standard

District courts have discretion in deciding whether to enter default judgment. *See Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). "Factors which may be considered by courts in exercising discretion as to the entry of a default judgment include: (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action, (5) the possibility of a dispute concerning material facts, (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits." *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986). "In applying this discretionary standard, default judgments are more often granted than denied." *Phillip Morris USA Inc. v. Castworld Prods., Inc.*, 219 F.R.D. 494, 498 (C.D. Cal. 2003).

### B. The *Eitel* Factors Support Granting Default Judgment Against Defendant

#### 1. DISH Network Will Be Prejudiced Absent a Default Judgment

Regarding the first *Eitel* factor, DISH Network will be prejudiced absent the Court's entry of default judgment because it has no other means of recourse against Defendant. The merits of DISH Network's claims and the damages sustained from Defendant's acts of piracy are set forth in the sections that follow when discussing the other *Eitel* factors. Default judgment should be granted to compensate DISH Network for its loss, and to prevent Defendant from avoiding liability by simply ignoring this lawsuit. Therefore, the first factor favors entry of default judgment. *See id.* at 499 (finding that prejudice factor supported default judgment because plaintiff "would be without other recourse for recovery"); *DISH Network L.L.C. v. Gonzalez*,

Case 2:17-cv-03528-MWF-JPR   Document 16-1   Filed 08/21/17   Page 7 of 20   Page ID #:191

1  No. 13-cv-00107-LJO-SKO, 2013 WL 2991040, at *3 (E.D. Cal. June 13, 2013)
2  (recommending default judgment in a similar case filed against a defendant using
3  the NFPS service, and finding the first *Eitel* factor favored default judgment because
4  DISH Network had "no other means by which to recover damages"), adopted at
5  2013 WL 4515967  (E.D. Cal. Aug. 26, 2013).

      **2.**      **DISH Network Adequately Pleads Defendant's ECPA Violations**

      The next two *Eitel* factors "require that a plaintiff state a claim on which the plaintiff may recover." *Castworld*, 219 F.R.D. at 499. It is well-established that upon entry of default the allegations in the complaint relating to the liability of the defendant are taken as true. *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987); *Adriana Int'l Corp. v. Thoeren*, 913 F.2d 1406, 1414 (9th Cir. 1990) ("The default conclusively establishes the liability of [the defendant].").

      DISH Network requests default judgment as to Count III of the complaint, which alleges violations of the Electronic Communications Privacy Act, 18 U.S.C. §§ 2511(1)(a), 2520 (a). The ECPA makes it unlawful to "intentionally intercept" an "electronic communication". 18 U.S.C. § 2511(1)(a). Encrypted satellite broadcasts of television programming, such as those transmitted by DISH Network, constitute "electronic communications" for purposes of the ECPA. *See Gonzalez*, 2013 WL 2991040, at *3-4 (citing *DirecTV, Inc. v. Webb*, 545 F.3d 837, 844 (9th Cir. 2008)); *United States v. Lande*, 968 F.2d 907, 909-10 (9th Cir. 1992). "[A] private right of action is allowed under 18 U.S.C. § 2520 for violations of § 2511." *DirecTV, Inc. v. Bennett*, 470 F.3d 565, 569 (5th Cir. 2006); see also *Gonzalez*, 2013 WL 2991040, at *3 (citing cases).

      DISH Network adequately pleads a claim for relief under section 2511(1)(a). According to the complaint, Defendant purchased at least one subscription to NFPS. (Dkt. 1, Compl. ¶ 26.) Defendant accessed the NFPS service using an unauthorized receiver loaded with piracy-enabling software. (*Id.* ¶ 27.) Each time Defendant tuned their receivers to an encrypted DISH Network channel, the control word for

-3-



that specific channel was requested from the NFPS server. (*Id.*) In response, the NFPS server returned the control word to Defendant, who used the control word to decrypt DISH Network's encrypted satellite signal and view DISH Network programming without authorization. (*Id.*) Defendant's interception was the product of several deliberate acts directed at exploiting the NFPS service, and therefore was intentional and not inadvertent. (*See id.* at ¶¶ 26-28.)

Altogether, the well-pleaded allegations in the complaint, which are deemed true, conclusively establish Defendant's intentional interception of DISH Network's satellite signal in violation of the ECPA. In an analogous case filed against an NFPS subscriber, the court held that DISH Network's allegations concerning the unlawful interception of DISH Network programming "adequately set forth a claim under Sections 2520(a) for a violation of Section 2511." *Gonzalez*, 2013 WL 2991040, at *4; see *DISH Network L.L.C. v. DelVecchio*, 831 F. Supp. 2d 595, 599 (W.D.N.Y. 2011) (finding similar complaint filed against subscriber of Dark Angel IKS service stated "sufficient facts to show a plausible claim for relief" under the ECPA). The second and third *Eitel* factors support entry of default judgment against Defendant.

**3.  The ECPA Allows for The Damages Requested By DISH Network**

Section 2520(c)(2) authorizes statutory damages where, as here, a scrambled or encrypted electronic communication was intentionally intercepted. *See* 18 U.S.C. § 2520(c)(1)-(2). The statute sets the damages at the greater of: "(A) the sum of the actual damages suffered by the plaintiff and any profits made by the violator as a result of the violation; or (B) statutory damages of whichever is the greater of $100 a day for each day of violation or $10,000." *Id.* § 2520(c)(2) (emphasis added).

DISH Network requests damages of $10,000 for Defendant's violations of the ECPA. The damages sought by DISH Network are expressly authorized by statute, reasonable in light of the seriousness of Defendant's misconduct, and in line with what courts have awarded in analogous cases. *See infra* Part II.C (setting forth evidence to justify $10,000 in damages). Thus, the fourth *Eitel* factor favors a



default judgment. *See Castworld*, 219 F.R.D. at 500-01 (fourth factor supported default judgment where plaintiff sought and was awarded $2 million in statutory damages because that relief was authorized under the Lanham Act and would serve to deter future infringement); *Gonzalez*, 2013 WL 2991040, at *4 ("Because Congress has expressly authorized a court to award damages of $10,000, the Court cannot conclude that this amount is per se unreasonable such that it would preclude or weigh against the entry of default judgment. This factor weighs in favor of default judgment.").

### 4. There Is No Potential for A Dispute Over Material Facts

The fifth *Eitel* factor favors entry of default judgment because there is no possibility of a dispute over any material fact. The allegations in DISH Network's complaint concerning liability were deemed true when Defendant failed to respond and default was entered against him. *TeleVideo Sys.*, 826 F.2d at 917-18. DISH Network also provides evidence, set forth below, establishing that Defendant did in fact intercept DISH Network's satellite signal in violation of the ECPA. Defendant have not appeared to raise any factual dispute, despite being provided notice and the opportunity to respond. Therefore, the fifth factor supports default judgment. *See Castworld*, 219 F.R.D. at 500 (fifth factor favored default judgment given the well-plead allegations in the complaint, which had not been challenged); *Gonzalez*, 2013 WL 2991040, at *5 (finding that "no genuine issue of material fact is likely to exist because the allegations in the complaint are taken as true") (citing *TeleVideo Sys.*, 826 F.2d at 917-18).

### 5. Defendant's Default Is Not the Result Of Excusable Neglect

The sixth *Eitel* factor asks whether the defendant's default may have resulted from excusable neglect. *Castworld*, 219 F.R.D. at 500. "This factor favors default judgment when the defendant has been properly served or the plaintiff demonstrates that the defendant is aware of the lawsuit." *Coach Servs., Inc. v. YNM, Inc.*, No. 2:10-CV-02326-JST (PLAx), 2011 WL 1752091, at *4 (C.D. Cal. May 6, 2011).



On June 13, 2017, Defendant was properly served with a summons and DISH Network's complaint. (Dkt. 8.) DISH Network has since served Defendant with its application for default and the Clerk's order of default by mailing them to the same address where Defendant was served with the complaint. (Declaration of David A. Van Riper ["Van Riper Decl.] ¶ 2.) Therefore, Defendant has been fully aware of this lawsuit for about two months and the failure to respond is not the result of excusable neglect.

For these reasons, the sixth *Eitel* factor supports entry of default judgment against Defendant. *See Castworld*, 219 F.R.D. at 501 (finding default resulted from "willful disobedience" and not excusable neglect where the defendant was properly served with the plaintiff's complaint and motion for default judgment but did not respond); *Elektra Entm't Group Inc. v. Bryant*, No. CV 03-6381GAF (JTLx), 2004 WL 783123, at *5 (C.D. Cal. Feb. 13, 2004) (holding sixth factor favored default judgment where defendant was served with the complaint and application for entry of default, and an extended period of time passed without an opposition being filed).

### 6. Public Policy Does Not Preclude Default Judgment

The final *Eitel* factor considers the policy favoring decisions on the merits. It is clear that "[t]he preference to decide cases on the merits does not preclude a court from granting default judgment." *Pepsico, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002); *see also Castworld*, 219 F.R.D. at 501 ("the seventh *Eitel* factor is not alone dispositive"). In fact, Federal Rule of Civil Procedure 55(a) authorizes a court to terminate the case before a decision on the merits where a party fails "to plead or otherwise defend." In these circumstances, deciding the matter on the merits is often "impractical, if not impossible." *Castworld*, 219 F.R.D. at 501. Defendant's failure to participate in this case has rendered a decision on the merits impracticable. Consequently, this final factor should not prevent the entry of default judgment against him. *See Coach*, 2011 WL 1752091, at *4 (examining last factor and concluding that "where a defendant fails to appear and respond … a decision on



the merits is impossible and default judgment is appropriate"); *Gonzalez*, 2013 WL 2991040, at *5 (finding the last factor was outweighed by the other *Eitel* factors that favored entry of default judgment).

On balance, the seven factors identified by the Ninth Circuit in *Eitel* support an order granting DISH Network's motion for default judgment against Defendant. In addition, the requirements for default judgment in Rule 55(b)(2) are met because Defendant is not a minor, incompetent, or exempt under the Servicemembers' Civil Relief Act. (*See* Van Riper Decl. ¶¶ 3-4, Exs. 1-2.)

## C.  DISH Network Should Be Awarded $10,000 In Statutory Damages

Damages may be assessed at the default judgment stage without a hearing if "the amount claimed is a liquidated sum or capable of mathematical calculation." *Davis v. Fendler*, 650 F.2d 1154, 1161 (9th Cir. 1981). Section 2520(c)(2) allows for damages in the fixed amount of $10,000 where a defendant intentionally intercepted an encrypted satellite transmission. *See* 18 U.S.C. § 2520(c)(1)-(2). An award of damages under section 2520 is discretionary, meaning a "[c]ourt may elect to award either the statutory sum or no damages at all. The court may not, however, award an amount that falls between those two figures." *Gonzalez*, 2013 WL 2991040, at *18; *DelVecchio*, 831 F. Supp. 2d at 601 ("Congress wrote § 2520(c)(2) to give discretion to the Court in determining whether to award damages, but the plain language of the statute does not… authorize the Court to grant anything other than the damages permitted by the statute.").

In *Gonzalez*, the court examined the following factors to determine whether it should award statutory damages pursuant to the ECPA: "(1) the severity or minimal nature of the violation; (2) whether there was actual damage to the victim; (3) the extent of any intrusion into the victim's privacy; (4) the relative financial burdens of the parties; (5) whether there was a reasonable purpose for the violation; and (6) whether there is any useful purpose to be served by imposing the statutory damages



amount." 2013 WL 2991040, at *8. These factors demonstrate that DISH Network should be awarded $10,000 for Defendant's violation of the ECPA.

### 1. Defendant Engaged in Piracy Violating The ECPA

Defendant purchased subscriptions to the NFPS service and used this service to intercept DISH Network programming. The records provided by the confidential informant establish that Defendant purchased an NFPS subscription from Digital TV on January 3, 2012, and received one passcode for accessing NFPS. (Declaration of Christopher Ross ¶¶ 6-7, Exs. 1-2.) NFPS is strictly a piracy service and has no legitimate aspect of its business. (Declaration of Gregory Duval ¶ 17.)

There is also evidence that Defendant used his NFPS subscriptions to illegally receive DISH Network programming. Internet posts and other evidence obtained by DISH Network establishes that Defendant is the user "pj9701" at www.ftazeta.com ("Ftazeta"), a website that has forums where members discuss DISH Network piracy, including NFPS. (Ross Decl. ¶ 8, Ex. 3.) On January 7, 2012, just a few days after Defendant purchase an NFPS subscription from the informant, Defendant made a post stating "What program can I use to create Channel list of 110… My satzen is missing channels?" (*Id.* ¶ 9(a), Ex. 4.) On January 8, 2012, Defendant made a post in the "Questions About PPV" thread, stating "It says that all these are Up… Mr. Popper's Penguins 526… the only one that works is 526." (*Id.* ¶ 9(b), Ex. 5.) Defendant made two posts on October 13, 2013 thanking an Ftazeta moderator for bringing back LA's local channels and also stating that "155 is working." (*Id.* ¶¶ 9(c)-(d), Exs. 6-7.) Similarly, on March 15, 2014, Defendant responded to a post asking "[a]nyone else experience audio issues on both UFC PPV CH 455 & 456" by stating "[c]hange to the Spanish channel seems to be ok for now." (*Id.* ¶ 9(e), Ex. 8.) Lastly, on May 3, 2014, Defendant was discussing the boxing match between Floyd Mayweather and Marcos Maidana and stated "Yup freezing on port 17110. Ip 31.230.2.31. HD 455 off and on." (*Id.* ¶ 9(f), Ex. 9.)



The foregoing forum posts demonstrate that Defendant was using his NFPS subscription to intercept DISH Network programming. Had Defendant participated in this matter, and DISH Network been given the opportunity to take discovery, more extensive violations of the ECPA may have been revealed. DISH Network, however, should not be denied damages because Defendant refused to participate in this case. *Gonzalez*, 2013 WL 2991040, at *7-9.

### 2. Defendant Caused Actual Harm to DISH Network

DISH Network suffers significant harm as a result of Defendant intercepting DISH Network programming. Piracy jeopardizes DISH Network's security system and requires costly security updates, damages the reputations and goodwill of DISH Network and NagraStar which are vital to their businesses, and leads to lost programming revenues and lost profits that are customarily gained from the sale of subscription packages and equipment to authorized DISH Network subscribers. *See infra* Part II.D.1 (discussing harm in greater detail in the context of DISH Network's request for permanent injunction). Accordingly, this second factor supports an award of statutory damages to DISH Network. *See Gonzalez*, 2013 WL 2991040, at *9 ("Plaintiffs have sufficiently demonstrated that they suffered actual damages from Defendant's actions through the loss of a legitimate subscriber for the period Defendant accessed the encrypted signal.").

### 3. The Relative Financial Burdens Favor DISH Network

The fourth factor in deciding whether to award damages looks at the relative financial burdens of the parties. DISH Network is harmed by Defendant's unlawful reception of DISH Network programming for the reasons stated above. The damage includes lost programming revenues, as well as injury to its business reputation and security system which cannot be exactly quantified. *See infra* Part II.D.1. The loss to DISH Network also includes the expense of pursuing this case, which consumes the time of its employees and requires retention of outside investigators and counsel, if nothing else to enjoin Defendant from intercepting DISH Network programming in



violation of the ECPA. Defendant, in contrast, has not provided any evidence of his finances. Nor has Defendant explained why a $10,000 judgment will impose a greater burden on him than he has already imposed on DISH Network by intercepting DISH Network programming. The fourth factor therefore weighs in favor of DISH Network or is neutral at best.

### 4.   There Is No Justification for Defendant's ECPA Violations

Defendant was made aware of this case but elected not to appear and explain his misconduct. *See supra* Part II.B.5. DISH Network's well-pleaded allegations concerning Defendant's unauthorized reception of DISH Network programming are taken as true. TeleVideo Sys., Inc., 826 F.2d at 917-18. As found in *Gonzalez* when applying this fifth factor, "[i]f the allegations are deemed to be true, there can be no legitimate reason for Defendant's actions." 2013 WL 2991040, at *9 (citing *DISH Network L.L.C. v. Rounds*, No. 11-241-Erie, 2012 WL 1158798, at *3 (W.D. Pa. Apr. 6, 2012)). Accordingly, the fifth factor supports an award of statutory damages.

### 5.   Awarding Damages to DISH Network Serves Important Purposes

Awarding damages will serve the legitimate purpose of compensating DISH Network for its loss, and in addition will act as a deterrent for Defendant and others to not engage in the unauthorized reception of DISH Network programming. The *Gonzalez* court held that this factor weighed "strongly in favor of awarding statutory damages" because "no damages would effectively reward Defendant for wrongful actions by allowing the misconduct to remain unsanctioned." 2013 WL 2991040, at *10. Stated differently, "a refusal to award statutory damages incentivizes, rather than deters, Defendant and others from similar acts of piracy." *Id.* For that same reason, this last factor tips sharply in favor of awarding damages to DISH Network.

In sum, DISH Network should be awarded $10,000 in damages for Defendant's violation of the ECPA. *See id.* at *10 (recommending $10,000 in statutory damages and noting "[t]his amount is sufficient to hold Defendant



accountable for misconduct and acts as a deterrent to others from committing similar acts in the future"), adopted at 2013 WL 4515967.

### D. DISH Network Should Be Awarded Permanent Injunctive Relief

The ECPA authorizes "preliminary and other equitable or declaratory relief as may be appropriate." 18 U.S.C. § 2520(b)(1). The Supreme Court has held that a permanent injunction is warranted where the plaintiff shows: "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). The requirements for entry of a permanent injunction are satisfied in this case.

#### 1. DISH Network Is Suffering Irreparable Harm That Will Not Be Corrected with Monetary Damages Alone

The Ninth Circuit recognizes that loss of goodwill, loss of ability to control business reputation, and lost profits each constitute irreparable harm. *See Rent-A-Center, Inc. v. Canyon Television & Appliance Rental, Inc.*, 944 F.2d 597, 603 (9th Cir. 1991) ("intangible injuries, such as damage to ongoing recruitment efforts and goodwill, qualify as irreparable harm"); *eBay, Inc. v. Bidder's Edge, Inc.*, 100 F. Supp. 2d 1058, 1066 (N.D. Cal. 2000) ("Harm resulting from lost profits and lost customer goodwill is irreparable … .") (citing *Cal. ex rel. Van De Kamp v. Tahoe Reg'l Planning Agency*, 766 F.2d 1316, 1319 (9th Cir. 1985)). Actual loss is not required to demonstrate irreparable harm; rather, "[e]vidence of threatened loss of prospective customers or goodwill" is sufficient. *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 841 (9th Cir. 2001).

Plaintiffs DISH Network and NagraStar provide encrypted satellite broadcasts of copyrighted television programming to legitimate, fee-paying subscribers. (Duval



Decl. ¶¶ 5-10.) These companies invest millions of dollars each year in the security measures that protect DISH Network programming from unauthorized viewing. (*Id.* ¶ 18.) Defendant's acts of piracy undermine the investment in this technology and result in the need for costly security updates. (*Id.*) As an example, the IKS form of piracy engaged in by Defendant is designed for circumventing the "Nagra 3" security technology most recently introduced by DISH Network, which took approximately 18 months to implement and had an estimated cost of more than $100 million. (*Id.* ¶ 19.) In addition, anti-piracy countermeasures are being continually developed and released in the DISH Network satellite stream, at significant expense, in order to prevent persons like Defendant from intercepting DISH Network programming. (*Id.*) Dividing these anti-piracy expenditures among Defendants and other persons engaged in the theft of DISH Network programming is impractical because the exact number of persons involved and the full extent of each person's involvement is not known. (*Id.*)

   Equally serious is the damage caused to the reputation and goodwill of DISH Network and NagraStar. The business reputations of these companies are built on and depend on the delivery of secured content. (*Id.* ¶ 20.) Piracy harms those reputations and interferes with the contractual and prospective business relationships of the companies, including relationships with programming providers and customers for set-top boxes and security system solutions. (*Id.*) Calculating the reputational damage and lost sales due to this impact is inherently difficult, if not impossible, and therefore constitutes irreparable harm. (*Id.*) See *DISH Network L.L.C. v. Dillion*, No. 12cv157 BTM (NLS), 2012 WL 368214, at *4 (S.D. Cal. Feb. 3, 2012) (finding irreparable harm in part because "piracy harms the reputation of Plaintiffs" and "[i]t would be very difficult to quantify Plaintiffs' … reputational damage and make Plaintiffs whole"); *Macrovision v. Sima Prods, Corp.*, No. 05 Civ. 5587 (RO), 2006 WL 1063284, at * 3 (S.D.N.Y. Apr. 20, 2006) ("If [plaintiff] is unable to prevent the circumvention of its technology, its business goodwill will



likely be eroded, and the damages flowing therefrom extremely difficult to quantify.").

Furthermore, piracy directly and negatively impacts DISH Network's bottom line to an extent that cannot be fully ascertained. DISH Network's average revenue for each authorized subscriber is approximately $84 per month. (Duval Decl. ¶ 21.) Defendant, however, enjoyed full access to DISH Network programming through the NFPS service including premium and pay-per-view channels, the value of which far exceeds that built into the average subscriber calculation. (*Id.*) Similarly, piracy deprives NagraStar and EchoStar Technologies of revenues ordinarily gained from the sale of equipment to DISH Network subscribers. (*Id.*) Determining the amount of profit lost as a result of Defendant's conduct is impractical because the nature and extent of the DISH Network programming unlawfully received is not known. (*Id.*)

For this additional reason, the harm caused by Defendant is irreparable and will not be completely corrected with an award of monetary damages. *See Dillion*, 2012 WL 368214, at *4 (finding irreparable harm because, among other reasons, "[i]t would be very difficult to quantify Plaintiffs' lost revenue"); *DISH Network L.L.C. v. Whitcomb*, No. 11-CV-0333 W (RBB), 2011 WL 1559825, at *3 (S.D. Cal. Apr. 25, 2011) (concluding that lost profits and subscribers resulting from the sale of DISH Network piracy devices constitutes irreparable harm sufficient to warrant a permanent injunction); *Coxcom, Inc. v. Chaffee*, 536 F.3d 101, 112 (1st Cir. 2008) (granting permanent injunction and finding irreparable harm based on the inability to detect cable piracy and the magnitude of lost programming revenues); *Gonzalez*, 2013 WL 2991040, at *10 (entering permanent injunction upon finding that DISH Network "suffered irreparable injury" and "damages alone are inadequate to prevent future piracy without injunctive relief").



## 2. The Balance of Hardships And Public Interest Favor An Injunction

DISH Network will be irreparably harmed without an injunction for all the reasons above. On the other hand, the burden placed on Defendant by an injunction consists only of the cost of foregoing illegal conduct, which should not be accorded any weight in an equitable balancing of factors. *See Triad Sys. Corp. v. Se. Express Co.*, 64 F.3d 1330, 1338 (9th Cir. 1995) ("[Defendant] cannot complain of the harm that will befall it when properly forced to desist from its infringing activities"); *Gonzalez*, 2013 WL 2991040, at *10 (holding similarly situated defendant "would suffer no hardship [from a permanent injunction], since he would only be prevented from engaging in illegal activity"). The balancing of equities therefore favors entry of the permanent injunction requested by DISH Network.

Likewise, it is beyond debate that the public interest is served by enjoining activities that violate federal law. *Whitcomb*, 2011 WL 1559825, at *4 (recognizing public interest in having anti-piracy legislation enforced) (citing *Coxcom*, 536 F.3d at 112). Permanently enjoining Defendant serves the public interest by upholding copyright protection and advancing the underlying goal of copyright law which is to "prevent[] the misappropriation of the skills, creative energies, and resources which are invested in the protected work." *Apple Computer, Inc. v. Franklin Computer Corp.*, 714 F.2d 1240, 1255 (3d Cir. 1983). The public, however, does not benefit by allowing Defendant to go on pirating copyrighted DISH Network programming. Consideration of the public interest favors injunctive relief. *See Gonzalez*, 2013 WL 2991040, at *10 ("the public interest would be served by protecting copyrights and aiding the enforcement of federal law").

## 3. The Injunction Must Be Sufficient to Prevent Defendant From Violating DISH Network's Rights Under The ECPA

The Court has broad discretion under Fed. R. Civ. P. 65 "to restrain acts which are of the same type or class as unlawful acts which the court has found to



have been committed or whose commission in the future, unless enjoined, may be fairly anticipated from the defendant's conduct in the past." *Orantes-Hernandez v. Thornburgh*, 919 F.2d 549, 564 (9th Cir. 1990).

Defendant received DISH Network's proprietary control words from NFPS and used these control words to circumvent the DISH Network security system and intercept DISH Network programming. Accordingly, DISH Network seeks an order that enjoins Defendant, and anyone acting in concert or participation with him, from:

- circumventing or assisting others to circumvent DISH Network's security system, or otherwise intercepting or assisting others to intercept DISH Network's satellite signal;
- testing, analyzing, reverse engineering, manipulating, or otherwise extracting codes, data, or information from DISH Network's satellite receivers, smart cards, satellite stream, or any other part or component of the DISH Network security system.

The same form of permanent injunction was entered in the *Gonzalez* case. *See* 2013 WL 2991040, at *11, adopted at 2013 WL 4515967.

### E. **DISH Network Should Be Awarded Reasonable Attorney's Fees**

Appropriate relief under the ECPA includes "a reasonable attorney's fee and other litigation costs reasonably incurred." 18 U.S.C. § 2520(b)(3). Local Rule 55-3 sets reasonable attorney's fees at $1,200 in the case of a $10,000 default judgment. DISH Network should therefore be awarded attorney's fees of $1,200.

### III. CONCLUSION

For these reasons, DISH Network respectfully requests that the Court grant default judgment against Defendant as to Count III of the complaint, award DISH



Network statutory damages of $10,000, attorney's fees of $1,200, and a permanent injunction. A proposed form of order has been submitted.

VAN RIPER LAW

Dated: August 21, 2017          By: */s/ David A. Van Riper*
                                    DAVID A. VAN RIPER
                                    Attorneys for Plaintiffs DISH
                                    Network L.L.C. and NagraStar LLC

